UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THE STATE OF NEW YORK,

                              Plaintiff,

              -vs-

SOLVENT CHEMICAL COMPANY, INC., and                    83-CV-1401C
ICC INDUSTRIES, INC.,

                              Defendants/Third Party Plaintiffs,

              -vs-

OLIN CORPORATION, ET AL.,

                              Third Party Defendants.

_____

APPEARANCES:    JAECKLE, FLEISCHMANN & MUGEL, LLP (DENNIS P. HARKAWIK,
                ESQ., of Counsel), Buffalo, New York, for Solvent Chemical
                Company, Inc.

                COHEN & GRIGSBY (DANIEL M. DARRAGH, ESQ., of Counsel),
                Pittsburgh, PA, for E.I. duPont de Nemours and Company.

                STEPHENS & STEPHENS (R. WILLIAM STEPHENS, ESQ., of
                Counsel), Buffalo, New York, for General Motors Corp.

        In this consolidated action,[1] defendant E.I. du Pont de Nemours & Company

("DuPont") moves pursuant to Rule 56 of the Federal Rule of Civil Procedure for partial

_____

        [1]This case was consolidated with Case No. 01-CV-425C by stipulation and order dated
November 29, 2005, "for all purposes through trial and any resulting appeals therefrom . . . ." (Item 1306).
The stipulation and order further provided that the consolidation was made:

        expressly without prejudice to any party's right to litigate an appropriate issue or issues at
        trial, including but not limited to the liability of said party to Plaintiff, or Third-Party
        Plaintiffs, if the liability of the party has not yet been adjudicated or resolved by motion or
        otherwise . . . [and] also without prejudice to the right of one or more parties to propose to
        the Court that issues specific to one or more parties be tried in an appropriate separate
        phase of the trial.

(*Id.*).  Unless noted otherwise, references to "Item" numbers are to documents filed on the docket in Case
No. 83-CV-1401.

summary judgment seeking (1) dismissal of the claims for contribution brought by third-party plaintiffs Solvent Chemical Company, Inc. ("Solvent") and ICC Industries Inc. ("ICC") (referred to collectively herein as "Solvent') under section 113(f) of the Comprehensive Environmental Response and Compensation Act ("CERCLA"), 42 U.S.C. § 9613(f), and (2) dismissal of Solvent's claim for injunctive relief brought under the Resource Conservation & Recovery Act ("RCRA"), 42 U.S.C. § 6901, *et seq.* (No. 01-CV-425C, Item 92).[2]

For the reasons that follow, DuPont's summary judgment motion is denied to the extent it seeks dismissal of Solvent's CERCLA contribution claim, and granted to the extent it seeks dismissal of Solvent's RCRA claim.

## BACKGROUND

The factual background of this action has been set forth at length in several prior decisions and orders, including orders denying two previous summary judgment motions by DuPont, and will be discussed here only as necessary to the resolution of the matters raised in the current motions.

This litigation has been pending on the court's docket since December 1983, when the State of New York sued Solvent and others to recover costs incurred in connection with the remediation of environmental contamination at property located at and adjacent to

---

[2]DuPont has also filed a motion (Item 1312) pursuant to Fed. R. Civ. P. 15 for leave to amend its answer for the purpose of asserting a statute of limitations defense to Solvent's anticipated claim for contribution pursuant to CERCLA § 113(f)(3)(B). The parties have advised the court that they agree this motion should be held in abeyance pending the outcome of DuPont's current motion for partial summary judgment seeking dismissal of Solvent's claim for contribution pursuant to CERCLA § 113(f)(1). In light of the court's determination herein that Solvent's CERCLA § 113(f)(1) claim survives DuPont's summary judgment motion, DuPont's motion for leave to amend the answer is denied as moot.

3163 Buffalo Avenue, Niagara Falls, New York (the "Site").   The original complaint contained causes of action under CERCLA § 107(a), the New York Environmental Conservation Law ("ECL"), the New York Real Property Actions and Proceedings Law ("RPAPL"), and the common law of public nuisance, seeking judgment requiring the defendants to:

> (a)  take all necessary measures to abate, reduce, and remediate the effects of the pollution and resulting public nuisance, and otherwise clean up the pollution;
>
> (b)   reimburse the State of New York for its costs in responding to such pollution;
>
> (c)   compensate the State for damages to the natural resources of the State of New York pursuant to CERCLA, the RPAPL, and the common law of nuisance; and
>
> (d)   pay penalties pursuant to the ECL.

(Item 1, ¶ 3).

Beginning in June 1986, Solvent commenced a series of third-party actions against more than 80 companies and individuals–including DuPont–for contribution based upon the third-party defendants' alleged release or disposal of hazardous substances at the Site (*see* Items 43 and 44).[3]   Following several years of site investigation and evaluation of remedial alternatives, the New York State Department of Environmental Conservation ("DEC") issued a Record of Decision ("ROD") in December 1996 outlining a detailed plan for the remedial action to be taken at the Site.   In April 1997, the State entered into separate Consent Decrees with Solvent and DuPont, among others, settling all of the

---

[3]The vast majority of these third-party claims have been settled, leaving DuPont, Olin Corporation, General Motors Corporation, and Recochem, Inc. (along with its president, Joseph Kuchar) as the remaining parties from whom Solvent seeks contribution for response costs incurred at the Site (*see generally* Item 1328).

State's claims against these parties for past and future response costs in return for the

settling parties' agreements to pay a portion of the costs, undertake performance of some

of the remedial work, or both.  This court approved the Consent Decrees in October 1997

(*see* Items 652, 655, and 657).[4]

In June 2001, Solvent commenced a new lawsuit against DuPont (referred to by the

parties as "Action II") for contribution pursuant to CERCLA § 113(f)(1) and the common

law, seeking equitable allocation of response costs allegedly incurred as a result of the

migration of hazardous substances[5] from the DuPont facility adjacent to the 3163 Buffalo

Avenue Site.  Solvent also asserted a claim under RCRA for injunctive relief "[o]rdering

DuPont to take such action as is necessary to abate the imminent and substantial

endangerment which it caused or to which it has contributed . . ." (Amended Complaint, No.

01-CV-425C, Item 42, p. 7).  As mentioned above, Action II was recently consolidated with

this action for all purposes throughout trial and appeal.

Prior to consolidation, DuPont filed two successive motions for summary judgment

in No. 01-CV-425C seeking dismissal of Solvent's CERCLA contribution claim.  Upon full

consideration after oral argument, the court denied each of these motions, essentially

finding that DuPont had failed to meet its burden of demonstrating the absence of a

genuine issue of material fact with respect to its liability under CERCLA for contribution

---

[4]Court approval came after the State had filed an amended complaint by stipulation asserting a first-party CERCLA § 107 claim against DuPont based on any environmental contamination that might have occurred during DuPont's operation of an "impregnite" manufacturing plant at the Site under contract with the United States during Word War II (*see* Item 661)).

[5]Namely, "chlorinated aliphatic compounds" including trichloroethene ("TCE"), tetrachloroethene ("PCE"), vinyl chloride, dichloroethylene ("DCE"), chloroform, and 1,1,2,2-tetrachloroethane (*see* No. 01-CV-425C, Item 73, Exs. 6 & 7).

based on an equitable share of the remediation costs at the Site attributable to the migration of hazardous substances from the DuPont facility, and that neither the CERCLA statute nor the Consent Decree offered DuPont full protection from the contribution liability asserted by Solvent. *See Solvent Chemical Co. v. E.I. DuPont De Nemours & Co.*, 2005 WL 1523570 (W.D.N.Y. June 28, 2005) (No. 01-CV-425C, Item 91); *Solvent Chemical Co. v. E.I. DuPont De Nemours & Co.*, 242 F. Supp. 2d 196 (W.D.N.Y. December 24, 2002) (No. 01-CV-425C, Item 41). The court noted in its June 28, 2005 decision and order that the matters raised and argued by DuPont in the second motion were identical to the matters decided against it in the first. *See Solvent*, 2005 WL 1523570, at *7, *8. The court also acknowledged–but rejected–DuPont's attempt to supplement the record with respect to the issues addressed in the Supreme Court's December 2004 decision in *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004), as applied by the Hon. William M. Skretny in *W.R. Grace & Co.–Conn. v. Zotos International, Inc.*, 2005 WL 1076117 (W.D.N.Y. May 3, 2005), upon reviewing those cases and finding their holdings of no application here. *Solvent*, 2005 WL 1523570, at *10 n. 9.

DuPont now argues that the court should revisit the issue as to the application of *Cooper Industries* and its progeny, including *Zotos International* and the Second Circuit's September 9, 2005 decision in *Consolidated Edison Company of New York, Inc. v. UGI Utilities, Inc.*, 423 F.3d 90 (2d Cir. 2005). According to DuPont, these cases have changed the law pertaining to CERCLA contribution claims by making it clear that a right of contribution in favor of a private party arises under the statute only when that party has been sued under CERCLA, or when that party has resolved its CERCLA liability (rather

than some broader category of legal claims) by, for example, entering a Consent Decree with the State. DuPont contends that because of this change in the law, Solvent's contribution claim against DuPont to recover its costs to perform the remedy for the Site must be dismissed because those costs are solely the result of the resolution of Solvent's liability to the State under the New York Environmental Conservation Law and the common law of public nuisance, not the resolution of any CERCLA liability to the State.

DuPont also seeks dismissal of Solvent's RCRA claim because the remedy selected in the ROD has been implemented to fully address the environmental conditions at the Site, and Solvent has not identified any further remedial actions necessary to abate an imminent and substantial danger at the Site.

In response (Item 1308), Solvent contends that this court should adhere to its previous ruling with respect to the legal relevance of *Cooper Industries* and *Zotos International* to the section 113(f)(1) contribution claim asserted against DuPont in this case, and that it has sufficiently pleaded a claim for injunctive relief under RCRA.

These contentions are addressed in turn.

## DISCUSSION

1. ***Cooper Industries*, *Zotos International*, and *Consolidated Edison***

In *Cooper Industries*, the Supreme Court considered the narrow issue as to "whether a private party who has not been sued under [CERCLA] § 106 or § 107(a) may nevertheless obtain contribution under § 113(f)(1) from other liable parties." *Cooper Industries*, 543 U.S. at 160-61. Upon examination of the clear language of

section 113(f)(1),[6] and giving that language its "natural meaning," the Court held that contribution under this provision "may only be sought subject to the specified conditions, namely, 'during or following' a specified civil action." *Id.* at 166.  Consequently, the Court held that in order for a private party to bring a contribution claim under CERCLA § 113(f)(1), that party must itself have first been sued in an administrative or judicial cost recovery action under CERCLA § 106 or § 107(a).  *Cooper Industries*, 543 U.S. at 165-68.

In the *Zotos International* case, Judge Skretny conducted a seven-day bench trial in May 2004 on a contribution claim brought under CERCLA § 113(f)(1) by the owner of a hazardous waste disposal site against a party who allegedly arranged for the disposal of hazardous substances there.  The plaintiff had entered an administratively (not judicially) approved settlement with New York State resolving its liability for the cost of investigation and remediation of environmental contamination at the site, but had never been subject to a CERCLA § 106 or § 107(a) civil action.  Prior to issuing his decision after trial, Judge Skretny allowed the parties to file post-trial briefs addressing the impact of the Supreme Court's intervening decision in the *Cooper Industries* case.  In his May 3, 2005 decision,

---

[6]As explained in *Cooper Industries*, CERCLA as it was originally enacted in 1980 did not mention the word "contribution," but Congress amended the statute in the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), adding section 113(f) to expressly authorize private entities that had been sued in a cost recovery action to bring contribution actions against others who were potentially liable.  *Cooper Industries*, 543 U.S. at 163-63.  Section 113(f)(1) provides:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.  Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law.  In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. § 9613(f)(1).

Judge Skretny found *Cooper Industries* "dispositive on the issue of section 113(f)(1) liability . . . ." *Zotos*, 2005 WL 1076117, at *2. Since the plaintiff had not itself been sued under CERCLA, and "[did] not argue otherwise," *id.*, the court dismissed the section 113(f)(1) claim.

Judge Skretny next considered the plaintiff's contention that the *Cooper Industries* decision did not adversely affect the plaintiff's right to contribution under CERCLA § 113(f)(3)(B),[7] notwithstanding that this section had never been relied upon by the plaintiff for recovery, or even referenced, prior to the post-trial briefing. After an in-depth statutory analysis of CERCLA's settlement scheme, the court determined that "[j]ust as a party must be sued under CERCLA before it can maintain a section 113(f)(1) contribution claim, it must settle CERCLA liability before it can maintain a claim under section 113(f)(3)." *Id.* at *7 (relying on pre-*Cooper* district court precedent). Upon close scrutiny of the administrative order on consent which the plaintiff had entered with the State ten years

---

[7]Section 113(f)(3)(B) provides:

> A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph [(f)](2).

42 U.S.C. § 9613(f)(3)(B). Paragraph (f)(2) provides:

> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

42 U.S.C. § 9613(f)(2).

prior to commencing the CERCLA contribution action,[8] Judge Skretny found nothing to indicate that the plaintiff had in any way resolved its CERCLA liability so as to allow it to bring a contribution claim under section 113(f)(3)(B).  As stated by the court:

> The 1988 Consent Order does not state that the DEC was exercising any authority under CERCLA, does not indicate that the EPA concurred with the remedy selected and does not provide a release as to any CERCLA claims.  In fact, the 1988 Consent Order makes no mention of CERCLA at all.

*Id.*

Relying on the court's reasoning in *Zotos International*, the Second Circuit in *Consolidated Edison* rejected a similar claim for contribution brought under section 113(f)(3)(B) by a private party which had entered a non-judicially approved voluntary cleanup agreement with New York State, but had not been sued "during or following" a civil action under section 106 or section 107(a).  The circuit court read section 113(f)(3)(B) "to create a contribution right only when liability for CERCLA claims, rather than some broader category of legal claims, is resolved."  *Consolidated Edison*, 423 F.3d at 95.  Upon review of the language of the voluntary cleanup agreement, the court found nothing to indicate that the plaintiff had resolved its liability under CERCLA, and therefore found that it had no

---

[8]Zotos International, Inc. (the defendant from whom the plaintiff sought contribution as the alleged "arranger" of the disposal of hazardous materials at the site) argued in its post-trial brief that the plaintiff's section 113(f)(3)(B) claim was barred by CERCLA's three-year statute of limitations for contribution claims.  *See Zotos*, 2005 WL 1076117, at *3; *see also* 42 U.S.C. § 9613(g)(3).  Judge Skretny did not reach this issue, finding instead that the 1988 administrative order did not qualify as an "administratively approved settlement" within the meaning of section 113(f)(3)(B).

subject matter jurisdiction over the plaintiff's claim for contribution under section 113(f)(3)(B).  *Id.* at 96-97.[9]

Once again, this court finds the holdings in *Cooper*, *Zotos,* and *Consolidated Edison* inapplicable to the facts and circumstances pertaining to Solvent's contribution claim against DuPont in this longstanding litigation.  This conclusion is inescapable, because in each of those cases the plaintiff sought to assert a CERCLA contribution claim where it had not itself been subject to a CERCLA civil action.[10]  In this case, there can be no doubt that Solvent was sued by the State under CERCLA § 107(a), and that the claim for contribution against DuPont was sought subject to the conditions of section 113(f)(1), "namely, 'during or following' a specified civil action."  *Cooper Industries*,  543 U.S. at 166.

Put simply (as the court attempted to do in footnote 9 of its June 28, 2005 decision and order), the limited holding of *Cooper Industries*–*i.e.*, that a private party seeking contribution under CERCLA § 113(f)(1) must itself have been subject to a civil action under CERCLA § 106 or § 107(a)–does not foreclose Solvent's section113(f)(1) contribution claim against DuPont in this case.  Accordingly, this court need not engage in the inquiry

---

[9]The Second Circuit went on to hold that, after *Cooper*, subject matter jurisdiction <u>did</u> exist under § 107(a), which "permits a party that has not been sued or made to participate in an administrative proceeding, but that, if sued, would be held liable under section 107(a), to recover necessary response costs incurred voluntarily, not under a court or administrative order or judgment."  *Consolidated Edison*, 423 F.3d at 100.  Based on this holding, Solvent requests leave to amend in order to assert a section 107(a) claim against DuPont should the court dismiss the section 113(f) contribution claim. However, in light of the court's finding herein that Solvent's section 113(f)(1) claim against DuPont survives *Cooper* and its progeny, Solvent's request for leave to amend is denied as moot.

[10]The same is true with respect to *ASARCO, Inc. v. Union Pacific R.R. Co.*, 2006 WL 173662 (D. Ariz. January 24, 2006), another case cited by DuPont.  There, after the Supreme Court issued its decision in *Cooper*, the plaintiff consented to the dismissal of both its cost recovery claim under section 107(a) and its contribution claim under section 113(f)(1), and the only issue before the court was whether the plaintiff's agreement with state governing voluntary cleanup of a hazardous waste site qualified as a "settlement" within the meaning of section 113(f)(3)(B).

undertaken by the respective courts in the *Zotos International* and *Consolidated Edison* cases to determine whether a private party who was <u>not</u> authorized to assert a claim under section 113(f)(1) could nonetheless find relief under section 113(f)(3)(B) or section 107(a).

For this reason, the court declines DuPont's invitation to reach the question whether, in order to obtain contribution against DuPont, Solvent must show that the claims resolved in its 1997 Consent Decree with the State were CERCLA claims rather than state law or common law claims. There is nothing in the *Cooper Industries* decision to suggest that this kind of showing is required where the party seeking contribution under section 113(f)(1) is qualified to do so. As demonstrated by *Consolidated Edison* and *Zotos International*, such an inquiry may become pertinent (if at all) when necessary to determine whether the party seeking contribution "has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement" in order to properly bring a claim under section113(f)(3)(B). No such claim has been asserted by Solvent against DuPont in this case and, in light of this court's repeated rulings that Solvent's contribution claim against DuPont is authorized under section 113(f)(1), the court finds no reason to require the parties to amend their pleadings to address such a claim at this late stage of the litigation.

This finding also disposes of DuPont's contention that a fundamental inconsistency exists between the court's "suggestion" in footnote 9 of the June 28, 2005 decision "that the consent decrees simply addressed the parties' CERCLA liabilities" (Item 1314, n. 8), and its determination in the December 24, 2002 decision that Solvent's "remedial efforts have been conducted under the State's Environmental Conservation Law, not CERCLA." *Solvent*, 242 F. Supp. 2d at 219. Not only is this contention a mis-characterization of the

court's notation in the June 2005 decision that "the consent decrees which the parties entered with the State <u>specifically</u> addressed the resolution of the parties' CERCLA liabilities," *Solvent*, 2005 WL 1523570, at *10 n. 9 (emphasis added), but it also takes the court's finding in the December 2002 decision far out of the context in which it was made with respect to DuPont's prior argument that the court lacked subject matter jurisdiction over Solvent's RCRA claim.  In any event, any inconsistency that might have existed has been eliminated by the ruling herein that the inquiry suggested by DuPont as to whether the consent decree resolved CERCLA liability is unnecessary where the plaintiff's contribution claim is authorized under section 113(f)(1).

Accordingly, DuPont is not entitled to summary judgment dismissing Solvent's claim for contribution under CERCLA § 113(f)(1).

## 2. RCRA

In the third claim of the amended complaint in No. 01-CV-425C, Solvent alleges that "the existence of hazardous substances emanating from the DuPont Facility to the 3163 Buffalo Avenue Site and the Hot Spot present an imminent and substantial endangerment to health and/or the environment within the meaning of RCRA § 7002(a)(1)(B)" (No. 01-CV-425C, Item 42, ¶ 30), and seeks an order requiring DuPont "to take such actions as is necessary to abate the imminent and substantial endangerment which it caused or to which it has contributed . . ." (*id.*, p. 7, ¶ D of *ad damnum* clause).  DuPont's present summary judgment motion seeks dismissal of this claim on the grounds that Solvent has failed to show that any imminent danger has existed at the Site since implementation of the selected remedy in June 2001, and has failed to identify or demonstrate the need for

any additional remedial actions that this court could properly order.  DuPont also contends

that, to the extent the Site at any time presented an imminent danger or unacceptable level

of risk, this was due primarily to the presence of Solvent-related chlorobenzenes and, at

a minimum, Solvent is jointly and severally liable for the environmental conditions at the

Site and therefore is precluded from asserting a RCRA § 7002(a)(1)(B) claim.

In response, Solvent has identified evidence in the record suggesting that factual

issues remain with respect to whether chlorinated aliphatic compounds are present in

excess of acceptable levels in the groundwater being pumped and monitored at the Site

(*see, e.g.*, Item 1309, Ex. G), and whether the DuPont facility is, currently or historically,

a likely potential source of those contaminants (*see, e.g.*, Item 1309, Ex. A (Frantzen Aff.);

Ex. F (Hughes Aff.)).  Solvent has also suggested injunctive relief that the court could order

to address the groundwater problem–for example, ordering the installation of deeper wells

on the DuPont property, or requiring DuPont to pay part of the costs of operating the

Solvent groundwater remediation system.

After briefing was complete, counsel for DuPont submitted a motion (Item 1324) to

supplement the record with respect to the RCRA cause of action.  Attached to the motion

as Exhibit A is a letter from the DEC to DuPont dated February 13, 2006, indicating that

the 3163 Buffalo Avenue Site had been reclassified from a class "2" site (at which

hazardous waste constitutes a significant threat to the environment; *see* 6 N.Y.C.R.R.

§ 375-1.8(a)(2)(ii)) to a class "4" (properly closed but requires continued operation,

maintenance and/or monitoring; *see* 6 N.Y.C.R.R. § 375-1.8(a)(2)(iv)) because: "All work

required in the Record of Decision and the Consent Decree is complete and a long-term

operation, maintenance and monitoring plan is ongoing.  The significant threat has been

eliminated." (Item 1324, Ex. A.)  DuPont contends that this correspondence constitutes a determination by the DEC that the Solvent Site no longer presents a significant threat to the environment, that no new or additional remedial actions are required there, and that consequently there is no factual or legal basis for this court to grant any relief on Solvent's RCRA claim (Item 1324, p. 4 (citing *87th Street Owners Corp. v. Carnegie Hill-87th Street Corp.*, 251 F. Supp. 2d 1215, 1217 (S.D.N.Y. 2002) (summary judgment granted dismissing RCRA claim where plaintiff failed to establish need for injunctive relief)).[11]

> Section 7002(a)(1)(B) is RCRA's citizen suit provision, which states in pertinent part: any person may commence a civil action on his own behalf—
>
> . . .
>
> against any person, including . . . any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment . . . .

42 U.S.C. § 6972(a)(1)(B).  The district court has jurisdiction in a citizen's suit:

> to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both . . . .

42 U.S.C. § 6972(a).

These provisions were designed to provide an injunctive remedy "that ameliorates present or obviates the risk of future 'imminent' harms, not a remedy that compensates for past cleanup efforts."  *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 486 (1996).  The

---

[11]The court granted DuPont's motion to supplement, and the DEC's 2/13/06 letter has now been made part of the record.

"imminent and substantial" language "'implies that there must be a threat which is present *now*, although the impact of the threat may not be felt until later.'" *Id.* (quoting *Price v. United States Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994)).  As stated by the Seventh Circuit, "Congress deliberately limited RCRA's remedies to injunctive relief–more specifically, injunctive relief obtained before the property is cleaned up, while the danger to health or the environment is 'imminent and substantial.'"  *Avondale Federal Sav. Bank v. Amoco Oil Co.*, 170 F.3d 692, 694 (7th Cir. 1999), *cert. denied sub nom.*, *Manufacturers Bank v. Amoco Oil Co.*, 528 U.S. 922 (1999).

Tracking the statutory language, the Second Circuit has held that in order to prevail on a section 7002(a)(1)(B) claim, a citizen suit plaintiff need only establish that the defendant (1) is a person (2) who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste (3) which may present an imminent and substantial endangerment to health or the environment. *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 359 (2d Cir. 1997).

DuPont's argument in support of summary judgment focuses on the third element. DuPont essentially claims that since it no longer handles chlorinated aliphatics at the facility adjacent to the Solvent Site, and since the State has now finally determined that no significant threat to the environment exists at the Site, Solvent cannot show that the contamination emanating from the DuPont facility "may present an imminent and substantial endangerment to health or the environment" under the statute.

On its part, Solvent cites to evidence in the record suggesting that factual issues remain with respect to whether chlorinated aliphatic compounds are still (or may some time

in the future be) present in excess of acceptable levels in the groundwater being pumped

and monitored at the Site (*see, e.g.*, Item 1309, Ex. G), and whether the DuPont facility is,

currently or historically, a likely potential source of those contaminants (*see, e.g.*, Item

1309, Ex. A (Frantzen Aff.); Ex. F (Hughes Aff.)).  This type of evidence alone has been

found sufficient in some cases to defeat summary judgment on a RCRA "imminent and

substantial endangerment" claim.  *See, e.g.*, *Raymond K. Hoxsie Real Estate Trust v.*

*Exxon Educ. Fdn.*, 81 F. Supp. 2d 359, 367-68 (D.R.I. 2000) (fact that off-site

contamination migrating through groundwater may not present emergency situation

requiring immediate relief is not dispositive of question whether plaintiffs have produced

sufficient evidence to establish genuine issue of material fact as to whether the

contamination may present an imminent and substantial endangerment) (citing *Meghrig*,

516 U.S. at 486).  Solvent also argues that the recent reclassification letter from the DEC

does not foreclose the possibility that the ongoing long-term monitoring program might at

some point in the future disclose groundwater contamination emanating from the DuPont

facility, posing imminent and substantial endangerment to the environment which would

require injunctive relief.

However, none of the cases cited by Solvent involves the situation presented here

in which the DEC has specifically declared that the cleanup of the Site is complete, and

that the significant threat to the environment is eliminated.  *Cf. Avondale*, 170 F.3d at

693-95 (affirming grant of summary judgment to defendant on imminent and substantial

endangerment issue where state Environmental Protection Agency had issued letter

releasing site from further remediation).  The parties generally agree that aside from the groundwater monitoring program, the remedy at the Site is complete.

In the court's view,  the situation presented is more akin to the facts in the *Avondale* case than to the cases cited by Solvent.  In *Avondale*, after the site had been cleaned up to meet environmental standards, the site owner continued to maintain its claim for a mandatory injunction under RCRA to prevent any further contamination that might be caused by off-site migration.  The circuit court found this claim to be "premature" because the site had been remediated, and "[t]hus off-site contamination may very well present an imminent and substantial danger at some point, but it does not present such a danger right now."  *Avondale*, 170 F.3d at 695.  Here, the recent correspondence from the DEC indicates that the remedial program at the Site is complete and the significant threat to the environment has been eliminated, with no mention of the presence of chlorinated aliphatic compounds in excess of state cleanup levels.  It is reasonable to conclude that had these exceedences been of concern to the DEC, it would have refrained from reclassifying the Site.

Accordingly, the court finds no genuine issues of material fact that would prevent entry of judgment in favor of DuPont of Solvent's claim for injunctive relief under RCRA. Simply stated, RCRA contemplates the availability of injunctive relief while the danger to health or the environment is "imminent and substantial"–*i.e.*, prior to completion of the cleanup to the satisfaction of state environmental standards.  While the contamination of the groundwater resulting from off-site migration of chlorinated aliphatic compounds may give rise to the need for RCRA injunctive relief at some point in the future, the undisputed

facts before the court suggest that it does not present an imminent and substantial danger at present.

## **CONCLUSION**

For the foregoing reasons, DuPont's motion for summary judgment (No. 01-CV-425C, Item 92) is granted to the extent it seeks dismissal of Solvent's claim for injunctive relief under the citizen's suit provision of RCRA.  This dismissal is without prejudice to Solvent's right to assert a RCRA claim against DuPont should groundwater contamination emanating from the DuPont facility present an imminent and substantial endangerment to the environment at some point in the future.

DuPont's motion for partial summary judgment is denied to the extent it seeks dismissal of Solvent's claim for contribution under CERCLA § 113(f)(1).

As a result of this ruling, this action is poised to enter its final phase, during which the court will be called upon to determine the appropriate equitable allocation of response costs among the remaining liable parties.  In this regard, Solvent–as the party bearing the burden of proof on the allocation issue–is directed to provide the court with a detailed summary of its evidence, including expert reports, anticipated testimony, and exhibits showing the extent to which cleanup costs are attributable to wastes for which each particular party (including Solvent) is responsible, each party's level of culpability, the degree to which each party benefitted from disposal of the waste, each party's ability to pay its share of the cost, or any other showing it intends to make in order to establish each remaining defendant's liability for an equitable share of the response costs incurred at the Site.  This submission shall be made no later than Monday, July 10, 2006.  Upon receipt

and review of this submission, the court will schedule a telephone conference with all remaining parties to discuss a reasonable schedule for proceedings in anticipation of the trial presently scheduled to commence on Monday, September 18, 2006.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated:   June   5   , 2006
p:\pending\03-1401.duPont.sj3.may17.06