UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THE STATE OF NEW YORK,

                        Plaintiff,

            -vs-

SOLVENT CHEMICAL COMPANY, INC., and
ICC INDUSTRIES, INC.,
                                                                    83-CV-1401C

                        Defendants/Third-Party Plaintiffs,

            -vs-

OLIN CORPORATION, ET AL.,

                        Third-Party Defendants.

_____

APPEARANCES:    JAECKLE, FLEISCHMANN & MUGEL, LLP (DENNIS P. HARKAWIK,
                ESQ., of Counsel), Buffalo, New York, for Solvent Chemical
                Company, Inc.

                HUSCH & EPPENBERGER, LLC (MICHAEL H. WETMORE, ESQ.,
                of Counsel), St. Louis, Missouri, for Olin Corporation


        Defendants/third-party plaintiffs Solvent Chemical Company, Inc. ("Solvent") and its

corporate parent ICC Industries Inc. ("ICC") (referred to jointly herein as "Solvent") have

filed a joint motion for summary judgment dismissing the counterclaim and fourth-party

complaint of third-party defendant Olin Corporation ("Olin").  The court heard oral argument

of the motion on August 22, 2006.[1]  For the reasons that follow, Solvent's motion is denied.

_____

        [1]Subsequent to the oral argument, the court referred the matter to Magistrate Judge Victor E.
Bianchini for a settlement conference, which took place on November 14, 2006.  No settlement having
been reached, the court now addresses the issues raised by Solvent's motion.

**BACKGROUND**

The factual background of this action has been set forth at length in several prior decisions and orders and will be discussed here only as necessary to the resolution of the matters raised in the current motion.  The action was commenced in December 1983 by the State of New York against Solvent pursuant to section 107 of the Comprehensive Environmental Response and Compensation Act ("CERCLA"), 42 U.S.C. § 9607, seeking to recover costs to be incurred in connection with the remediation of environmental contamination at property located at and adjacent to 3163 Buffalo Avenue, Niagara Falls, New York (the "3163 Buffalo Avenue Site").  The original complaint also contained causes of action under the New York Environmental Conservation Law ("ECL"), the New York Real Property Actions and Proceedings Law ("RPAPL"), and the common law of public nuisance (Item 1, ¶ 3).  The State's claims against Solvent were ultimately resolved pursuant to Consent Decrees, signed by the parties in April 1997 and approved by this court in October 1997 (*see* Items 652 and 655), by which Solvent agreed to pay a portion of the costs and/or undertake performance of the remedial work at the 3163 Buffalo Avenue Site, as outlined in the Record of Decision ("ROD") issued by the State in December 1996.

In the meantime, beginning in 1986 Solvent commenced a series of third-party actions against more than 80 companies and individuals for contribution based upon the third-party defendants' alleged release or disposal of hazardous substances at the 3163 Buffalo Avenue Site (*see* Items 43 and 44).  In its fifth amended third-party complaint, filed in April 1998, Solvent sued Olin for contribution seeking to recover an equitable share of the response costs incurred in the investigation and remediation of a "hot spot" of contamination located on Olin's property "west of the 3163 Buffalo Avenue Site and east

of Gill Creek" (Item 746, ¶ 133), as well as any costs incurred in remediating contamination

caused by the migration of hazardous substances onto the Site from the Olin property (*see*

*id.* at ¶¶ 132-36).  In the "WHEREFORE" clause of the fifth amended third-party complaint,

Solvent seeks the following relief against Olin:

> an order that should SOLVENT be required to expend funds to address the
> off-site hot spot or on-site contamination which migrated from the OLIN
> Property, or should the State of New York recover judgment against
> SOLVENT relating to the off-site hot spot or on-site contamination originating
> from the OLIN Property, then SOLVENT be adjudged entitled to (i) statutory
> indemnification or contribution from third-party defendant OLIN under
> CERCLA, 42 U.S.C. § 9607(a)(1), CERCLA, 42 U.S.C. § 9607(a)(2), and
> CERCLA, 42 U.S.C. § 9613(f)(1); (ii) implied equitable indemnity; and (iii)
> contribution under common law principles proportionate to its acts of conduct
> in contributing to the incident in question, and to the damages and/or injuries
> sustained by the State of New York, if any.

(*Id.* at p. 37.)

In May 1998 Olin served its answer (Item 809) to the fifth amended third-party

complaint, setting forth counterclaims against Solvent and fourth-party claims against ICC

seeking to recover the response costs incurred by Olin in connection with the cleanup of

Gill Creek, which is a tributary of the Niagara River that runs through Olin's property

located to the west of the 3163 Buffalo Avenue Site.  Olin participated in the Gill Creek

remediation pursuant to an administrative "Order on Consent" entered in March 1991

between the State, Olin, and E.I. du Pont de Nemours & Company ("DuPont") (referred to

herein as the "Olin/DuPont Order on Consent," copy attached as Ex. D to Item 1343). The

Gill Creek Site is described in the Olin/DuPont Order on Consent as "the bed and banks

of Gill Creek south of Buffalo Avenue, and any contiguous areas necessary or convenient

for the required activities hereunder."  (Item 1343, Ex. D, p. 2, ¶ 3.)

In its counterclaim against Solvent, Olin alleges that the contamination of Gill Creek was caused by releases of hazardous substances into the groundwater or through a discharge sewer that served the 3163 Buffalo Avenue Site during the time Solvent owned and operated the facility, and that Olin consequently incurred response costs at the Gill Creek Site totaling approximately $9 million.  Olin sets forth claims for cost recovery under CERCLA § 9607(a) (*see* Item 809, pp. 13-16); contribution under CERCLA § 9613(f)(1) (*id.* at pp. 16-19); and declaratory relief pursuant to CERCLA § 9613(g)(2) and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* (*id.* at pp. 19-21).[2]

Solvent now moves for summary judgment dismissing Olin's counterclaims/fourth-party claims in their entirety, based on the following grounds:

1.      As the result of the holdings in *Cooper Indus., Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004), and *Consolidated Edison Co. v. UGI Utilities, Inc.*, 423 F.3d 90 (2d Cir. 2005) ("*Con Ed*"), Olin may not maintain its CERCLA § 113(f)(1) contribution claim because Olin has neither been sued under CERCLA nor settled its CERCLA liability with respect to the Gill Creek cleanup;

2.      Under the Second Circuit's holdings in *Con Ed* and *Bedford Affiliates v. Sills*, 156 F.3d 416 (2d Cir. 1998), Olin may not maintain its section 107 claim because it is itself a potentially responsible party ("PRP") with respect to the costs it seeks, and it did not incur those costs voluntarily; and

---

[2]Olin also asserted claims based on common law theories of private nuisance and trespass (*see* Item 809, pp. 21-25).  In its summary judgment motion, Solvent sought dismissal of these claims on statute of limitations grounds, and Olin responded that it does not oppose Solvent's motion to the extent it seeks dismissal of the nuisance and trespass claims (*see* Item 1355, p. 16).  Accordingly, those claims are dismissed from the case.

3.    In the absence of a valid claim for relief under either section 107 or 113 of

CERCLA, Olin cannot assert a cause of action for declaratory judgment.

Each of these grounds is discussed in turn below.

## DISCUSSION

**1.    Olin's CERCLA § 113(f)(1) Claim**

This current motion marks the third time this court has been asked to determine the

effect of the Supreme Court's *Cooper Industries* holding on the CERCLA § 113(f)(1)

contribution claims at issue in this case.  As discussed in this court's June 5, 2006 decision

and order (Item 1330),[3] *Cooper Industries* examined the language of CERCLA § 113(f)(1),[4]

which authorizes a suit for contribution if brought "during or following" an administrative or

judicial cost recovery action under CERCLA § 106 or § 107(a), and held that in order for

a private party to bring a section 113(f)(1) claim that party must itself have been subject to

---

[3]In that decision and order, this court denied DuPont's motion for summary judgment seeking dismissal of Solvent's claim under CERCLA § 113(f)(1) for equitable allocation of response costs allegedly incurred by Solvent as a result of the migration of hazardous substances onto the 3163 Buffalo Avenue Site from the adjacent DuPont facility.  The court found that, since it was undisputed that Solvent had been sued by the State under CERCLA § 107(a), the limited holding of *Cooper Industries*–*i.e.*, that a private party seeking contribution under CERCLA § 113(f)(1) must itself have been subject to a civil action under CERCLA § 106 or § 107(a)–did not foreclose Solvent's section 113(f)(1) contribution claim against DuPont in this case.  *See New York v. Solvent Chemical Co., Inc.*, 2006 WL 1582383, at *4 (W.D.N.Y. June 5, 2006).

[4]Section 113(f)(1) provides in full:

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. § 9613(f)(1).

suit under section 106 or 107(a).  *Cooper Industries*, 543 U.S. at 165-68, *cited in New York v. Solvent Chemical Co., Inc.*, 2006 WL 1582383, at *3 (W.D.N.Y. June 5, 2006).  Solvent argues that, as a result of *Cooper Industries*, Olin cannot maintain its section 113(f)(1) claim for contribution with respect to the Gill Creek cleanup because Olin has never been sued under CERCLA § 106 or § 107(a) by any party to recover the costs of remediating the contamination at Gill Creek.

It is undisputed that Olin has never been subject to a civil action under CERCLA § 106 or § 107(a) with respect to the remediation of Gill Creek (*see* Item 1357, ¶ 13).  However, Olin contends that it should be allowed to seek contribution from Solvent pursuant to section 113(f)(1) for the cost of the Gill Creek cleanup, notwithstanding *Cooper Industries*, because the contribution claim was asserted "during" the third-party section 107(a) action brought against Olin by Solvent, or "following" the original section 107(a) action brought against Solvent by the State.

Recognizing that "the waters in this area still remain somewhat murky . . . ," *Seneca Meadows, Inc. v. ECI Liquidating, Inc.*, 427 F. Supp. 2d 279, 285 (W.D.N.Y. 2006), in this court's view, the prevailing status of the law in the Second Circuit requires a finding that Olin may not seek contribution from Solvent under section 113(f)(1) in this action with respect to the remediation of Gill Creek.  Stated simply, under the binding precedent of *Cooper Industries* and the plain language of the statute, because Olin has not itself been made subject to a civil action under either section 106 or 107(a) by any party at any time relating to the Gill Creek site, it is not entitled to the contribution rights available under section 113(f)(1) for equitable apportionment of the remediation costs associated with that

site.  None of the cases cited by Olin stands for the proposition that a party may rely on

section 113(f)(1) to recover response costs associated with a remedial action separate

from the remediation at issue in the underlying suit, and the court declines to adopt such

a broad reading of the statutory language.[5]

Rather, the court views the central issue raised by the pending motion as closely

akin to the question left open by the Supreme Court in *Cooper Industries–i.e.*, whether a

private party that is itself liable for response costs at a particular site, but is foreclosed from

seeking contribution from other potentially responsible parties under section 113(f)(1), may

pursue recovery from those parties under section 107(a).  It is to this question that the

court now turns.

## 2.    Olin's CERCLA § 107(a) Claim

The analysis begins with *Bedford Affiliates*, decided six years prior to *Cooper*

*Industries*.  In *Bedford Affiliates*, the plaintiff brought an action seeking both recovery of

cleanup costs under CERCLA § 107(a) and contribution under CERCLA § 113(f)(1) from

(among other defendants) a former sublessee who had previously operated a dry cleaning

business on the plaintiff's property.  The district court dismissed the plaintiff's cost recovery

claim under section 107(a), but allowed the section 113(f)(1) contribution claim to proceed.

---

[5]Solvent also argues that Olin cannot maintain a contribution claim under section 113(f)(3)(B), since the order on consent with the State pursuant to which Olin incurred its Gill Creek response costs did not resolve its CERCLA liability for that cleanup.  *See Con Ed*, 423 F.3d at 95-97 (administrative settlement that fails to resolve CERCLA liability cannot authorize contribution claim under section 113(f)(3)(B)).  Olin has not pleaded a section 113(f)(3)(B) claim in this action, and has not sought leave to amend the pleadings in order to do so.  In any event, since it has apparently conceded that nothing in its order on consent with the State resolved Olin's CERCLA liability with respect to the Gill Creek site (*see* Item 1357, ¶ 17), any attempt to amend the pleadings to assert a section 113(f)(3)(B) claim would be futile.  Accordingly, the court will not address this argument.

The district court then apportioned liability for remediation costs under section 113(f)(1), finding that the sublessee, as "the actual polluter at fault for the contamination of the Site . . .," was responsible for 95 percent of the response costs, while the plaintiff was found to be 5 percent responsible as owner of the site despite the undisputed fact that it did not actively contribute to the contamination. *Bedford Affiliates*, 156 F.3d at 422.

The Second Circuit affirmed these rulings on appeal. The circuit court thoroughly examined the relationship between CERCLA's two avenues for private parties to seek recoupment of response costs, recognizing the distinction between indemnification in a cost recovery action under section 107, and contribution under section 113(f)(1). *See id.* at 423-24. The circuit court read the statutory language to suggest that Congress intended to allow an innocent party to sue for full recovery of its response costs in a claim for indemnity under section 107(a), while a PRP may recover only those costs exceeding its *pro rata* share of the entire cleanup expenditure in a claim for contribution under section 113(f)(1). *See id.* at 424. The court based its holding in part on the different limitations periods for section 107(a) claims (six years) and section 113(f)(1) claims (three years), noting that, "[w]ere we to permit a potentially responsible person to elect recovery under either § 107(a) or § 113(f)(1), § 113(f)(1) would be rendered meaningless" because "[a] recovering liable party would readily abandon a § 113(f)(1) suit in favor of the substantially more generous provisions of § 107(a)." *Id.*

As mentioned above, the Supreme Court later held in *Cooper Industries* that a PRP who had paid cleanup costs but had not done so in the context of a CERCLA administrative abatement action or cost recovery action could not obtain contribution under

CERCLA § 113(f)(1) from other potentially liable parties.  The Supreme Court left open the question whether a private party that is itself liable for response costs may bring a section 107(a) cost recovery action against other PRPs for joint and several liability, *Cooper Industries*, 543 U.S. at 169 (citing *Bedford Affiliates* and cases from the First, Third, Fourth, Sixth, Ninth, Tenth, and Eleventh Circuits which had answered that question in the negative), as well as the related issues as to whether a plaintiff seeking to recover shares of cleanup costs fairly chargeable to other PRPs might pursue a section 107 cost recovery action "for some form of liability other than joint and several . . . ," *id*. at 170, or claim "an implied right of contribution" under section 107.  *Id*. at 170-71.

In *Con Ed*, the Second Circuit addressed the question left open in *Cooper Industries* whether a PRP[6] who had not been subject to a civil action under CERCLA may still maintain a claim against other PRPs under section 107(a).  The circuit court determined that although the holding in *Cooper Industries* prohibits a PRP who has not been sued from seeking contribution under section 113(f)(1), that party could still recover under section 107(a) for "necessary response costs incurred voluntarily, not under a court or administrative order or judgment."  *Con Ed*, 423 F.3d at 100.  The court reasoned:

> Given that section 107(a) is distinct and independent from section 113(f)(1), and that section 113(f)(1)'s remedies are not available to a person in the absence of a civil action as specified in that section, determining whether a party in [the plaintiff]'s circumstances [*i.e.*, a PRP who has not been sued but who has voluntarily incurred response costs] may sue under section 107(a) is easily resolved based on that section's plain language.  Section 107(a) makes parties liable for the government's remedial

---

[6]The *Con Ed* panel eschewed the phrase "potentially responsible party" and its "PRP" acronym as "vague and imprecise," in favor of the term "a party that, if sued, would be held liable under section 107(a)."  *Con Ed*, 423 F.3d at 98 n.8.  However, in *Schaefer v. Town of Victor*, 457 F.3d 188 (2d Cir. 2006), discussed in the text *infra*, a subsequent panel reverted to use of the terms "potentially responsible party" and "PRP," presumably in accordance with long accepted common practice in CERCLA litigation.

and removal costs and for "any other necessary costs of response incurred
by any other person consistent with the national contingency plan."

*Id.* at 99 (quoting section 107(a)).  The court concluded that the plaintiff could bring an

action for indemnification under section 107(a) because, "in light of *Cooper Industries*, [the

plaintiff]'s costs to clean up the sites . . . are 'costs of response' within the meaning of that

section."  *Id*. at 97.

In reaching this conclusion, the circuit court noted that *Cooper Industries* has cast

doubt on the continued viability of the holding in *Bedford Affiliates* that a PRP may not

maintain an action under section 107(a):

> Certainly, it no longer makes sense to argue that permitting a potentially
> responsible person to sue under section 107(a) would render
> section 113(f)(1)'s statute of limitations meaningless because a party
> proceeding in the absence of a civil action no longer has the option of suing
> under section 113(f)(1).  Consequently, it might be argued that, in the wake
> of *Cooper Industries*, *Bedford Affiliates*'s section 107(a) holding can no
> longer stand.

*Id*. at 101 n. 12 (citation omitted).   The court declined the opportunity to overrule *Bedford*

*Affiliates*, however, and instead distinguished that case based on two factors:

> First, unlike in this case where there has been no adjudication of [the
> plaintiff]'s liability for response costs and no administrative or judicially
> approved settlement requiring [the plaintiff] to incur those expenses, in
> *Bedford Affiliates*, the plaintiff had entered into two consent orders with the
> Department, pursuant to which the plaintiff began cleanup and remedial
> action. . . .
>
>     . . . .
>
> Second, the *Bedford Affiliates* plaintiff, having agreed to the consent
> order, put the extent of its liability at issue by proceeding to seek recovery
> under both sections 107(a) and 113(f)(1).  As noted, under section 113(f),
> the district court found that the plaintiff was partially liable for the costs of
> response.   To rule that in those circumstances Bedford could have
> proceeded under section 107(a) to seek recovery of one hundred percent of

-10-

the costs, this court would have had to hold in substance that a party already adjudicated liable for a portion of the costs of response under section 113(f)(1) could circumvent that section by recovering under section 107(a) that portion of the costs attributed to it by the adjudication. That is, having found that the district court did not abuse its discretion in attributing to Bedford responsibility for five percent of the necessary response costs, the court did not have to reach the question of whether Bedford could proceed under section 107(a) to recoup those costs.

*Id.* at 101-02.

More recently, in *Schaefer v. Town of Victor*, 457 F.3d 188 (2d Cir. 2006), the Second Circuit once again declined to revisit *Bedford Affiliates* in determining "whether a potentially responsible party that may not seek contribution under § 113(f)(1) may nevertheless recover in indemnity under . . . § 107(a)." *Id.* at 190.   The court reexamined the relationship between section 113(f)(1) and section 107(a), as well as the effect that the holdings in *Cooper Industries* and *Con Ed* have had on *Bedford Affiliates*, and found *Con Ed* "controlling on the question of whether [the plaintiff] has a cause of action under § 107(a)." *Id.* at 201.

The plaintiff in *Schaefer*, like the plaintiff in *Con Ed*, was a PRP who had not been sued under either section 106 or section 107 but sought to recoup response costs from other PRPs.   Also like the plaintiff in *Con Ed*, the plaintiff in *Schaefer* had incurred its response costs voluntarily (*i.e.*, not pursuant to a court or administrative order or judgment), and had not been subject to a previous finding of partial liability under section 113(f)(1).   The circuit court noted that, unlike the plaintiff in *Con Ed*, the *Schaefer* plaintiff entered into two consent orders with the State, but had initiated the cleanup of the site and  began to incur response costs prior to entering the second consent order.

> As a result, in contrast to *Bedford Affiliates*, where Bedford agreed to begin cleanup procedures pursuant to a consent order with the [State], Schaefer's response costs were not incurred solely due to the imposition of liability through a final administrative order.  Thus, under the holding of this Court in *Consolidated Edison*, Schaefer may bring this action under § 107.

*Id.* at 202 (citations omitted); *accord Atlantic Research Corp. v. United States*, 459 F.3d 827 (8th Cir. 2006) (adopting the reasoning of *Con Ed* to find right of contribution under § 107 available to parties who have incurred necessary costs of response, but have neither been sued nor settled their liability under §§ 106 or 107); *Metropolitan Water Reclamation Dist. of Greater Chicago v. North American Galvanizing & Coatings, Inc.*, 473 F.3d 824 (7th Cir. 2007) (joining Second and Eighth Circuits in recognizing right of action under § 107(a) in favor of PRP ineligible for contribution under § 113(f)(1)); *but see E.I. DuPont De Nemours & Co. v. United States*, 460 F.3d 515 (3d Cir. 2006) (*Cooper Industries* does not require revisiting prior holdings that PRP seeking to offset cleanup costs is limited to contribution under § 113).

Relying on the precedent of *Con Ed*, Hon. David G. Larimer recently ruled in *Seneca Meadows* that a PRP seeking contribution from other PRPs for the cost of cleaning up a landfill pursuant to consent orders entered with the DEC could bring its claim under section 107(a).  Judge Larimer had ruled in August 1998–prior to the Second Circuit's *Bedford Affiliates* decision–that the landfill owner, SMI, could not maintain a section 107(a) cost recovery action against other PRPs, but instead was "limited to a § 113 contribution claim to recover only those response costs that exceed its equitable share."  *Seneca Meadows, Inc. v. ECI Liquidating, Inc.*, 16 F. Supp. 2d 255, 258 (W.D.N.Y. 1998).  However, in his April 20, 2006 decision after trial, Judge Larimer reconsidered this ruling

in light of *Cooper Industries*, *Con Ed*, and other intervening cases, and found that the landfill owner could proceed with its section 107(a) claim as well.  Noting that *Cooper Industries* had rendered the rule stated in *Bedford Affiliates* of "questionable validity" since the combination of the holdings in those cases "would create a perverse incentive for PRP to wait until they are sued before incurring response costs . . . ,"  *Seneca Meadows*, 427 F. Supp. 2d at 288 (quoting *Syms v. Olin Corp.*, 408 F.3d 95, 106 n. 8 (2d Cir. 2005)), Judge Larimer found that CERCLA's statutory purpose to encourage prompt cleanup of hazardous waste sites would be best served by allowing the landfill owner to recover in contribution under section 107(a).  *Id.* at 289.

As in *Con Ed*, a key factor distinguishing this finding from the holding in *Bedford Affiliates* was the fact that the plaintiff in *Bedford* sought full indemnity for all of its response costs under section 107, whereas the landfill owner in *Seneca Meadows* sought to recoup only those costs allocable to the remaining PRP.  *Id.*  In addition, Judge Larimer was careful to distinguish the holding in *Con Ed* that a section 107(a) claim may be brought by a PRP for response costs incurred voluntarily, not under a court or administrative order or judgment, based on the specific facts of the case before him:

> In the case at bar, SMI was operating under consent orders issued by the DEC, but it would not be entirely accurate to characterize its response costs as "involuntary."  For one thing, the consent orders expressly provided that SMI admitted no liability or fault.  In addition, SMI had not been sued, and there was no threat that SMI "might imminently be held liable . . . under an administrative or court order or judgment."  The impetus behind the process leading to the consent orders was SMI's desire to expand the landfill, and the conditions that the DEC placed on SMI in order to obtain the necessary authorization to do so.  SMI may not have acted entirely out of altruistic motives, but neither had it been found liable, or even sued at that point.

*Id.* at 290.

In this court's view, the facts presented on Olin's contribution claim against Solvent fit squarely on all fours with the facts relied on by Judge Larimer in *Seneca Meadows*.  First of all, Olin's section 107 claim clearly seeks contribution from Solvent as opposed to full indemnity, asserting liability for only those response costs incurred "in investigating, remediating and monitoring Gill Creek, attributable to the release and/or disposal of hazardous substances at or from the Solvent Chemical Site" (Item 809, p. 16). Furthermore, the Olin/DuPont Order on Consent expressly provides that Olin has admitted no liability or fault for the contamination of Gill Creek.[7]  Olin has not been sued by the State to compel the Gill Creek cleanup, and there is nothing in the record before the court to indicate that Olin faces an imminent threat of liability for the cleanup under an administrative or court order or judgment.  Rather, the record suggests that the Gill Creek remedial action was completed in phases, with initial sediment remediation taking place voluntarily in the early 1980's, followed by a second phase of sediment remediation in 1992 and, finally, partial removal and capping of the discharge sewer in the summer of 2000 (*see, e.g.*, Item 1357, Ex. 3, Part III).

Based on these facts, the court finds that although Olin's Gill Creek response costs were ultimately incurred under an order on consent with the State, it would not be entirely accurate to characterize those costs as "involuntary."  Like the landfill owner in *Seneca Meadows*, Olin may not have acted entirely out of altruistic motives in participating in the

---

[7]Specifically, the Consent Order provides that, "[t]he findings, provisions, terms and conditions of this Order shall not give rise to any presumption of law or finding of fact and shall not be deemed to be admissions of any kind on the part of [Olin] . . . " (Item 1343, Ex. D, p. 3, ¶ 6).

Gill Creek remediation, but neither had it been found liable or subject to a civil action for cost recovery at that point. Following the persuasive reasoning and local precedent of *Seneca Meadows*, Olin should be allowed to seek recovery of a portion of its Gill Creek costs from Solvent under section 107(a).

This result furthers the remedial purpose of CERCLA by allowing Olin to attempt to recover some of the costs it incurred addressing contamination which it alleges emanated from Solvent's 3163 Buffalo Avenue facility–the same facility and the same contamination forming the basis of the underlying litigation. To dismiss Olin's contribution claim from the case at this stage would allow Solvent the opportunity to convince the court that a share of the response costs at issue should be apportioned to Olin, while denying Olin the same opportunity. As succinctly stated by Judge Larimer:

> It would be inequitable, and inconsistent with the purposes of CERCLA as it has been interpreted and applied by the Second Circuit both before and after *Cooper Industries*, to hold that what was at worst a technical omission [*i.e.*, lack of clarifying language in the consent orders]–and one that took on potential significance only after *Cooper Industries* was decided – now bars [Olin] from seeking any CERCLA contribution at all.

*Seneca Meadows*, 427 F. Supp. 2d at 290-91.

Accordingly, this court finds that Olin may proceed with its CERCLA § 107(a) claim against Solvent in this action.

### 3.    Olin's Claim for Declaratory Relief

Finally, because Olin has a valid claim under  CERCLA § 107, its cause of action seeking declaratory relief pursuant to CERCLA § 9613(g)(2) and the Declaratory Judgment Act should be allowed to proceed as well. *See generally Concerned Citizens of Cohocton*

*Valley, Inc. v. New York State Dept of Envtl. Conservation*, 127 F.3d 201, 206 (2d Cir. 1997).

## **CONCLUSION**

For the foregoing reasons, Solvent/ICC's motion for summary judgment (Item 1342) is denied.  Olin may proceed on its counterclaims against Solvent and fourth-party claims against ICC seeking to recover response costs incurred by Olin in remediating the Gill Creek Site, and seeking declaratory relief pursuant to CERCLA § 9613(g)(2) and the Declaratory Judgment Act.

So ordered.

\s\ John T. Curtin

JOHN T. CURTIN
United States District Judge

Dated:  June   6    , 2007
p:\opinions\83-1401.june407