UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THE STATE OF NEW YORK,

                            Plaintiff,

                -vs-

SOLVENT CHEMICAL COMPANY, INC., and                 83-CV-1401-JTC
ICC INDUSTRIES, INC.,

                            Defendants/Third-Party Plaintiffs,

                -vs-

OLIN CORPORATION and
E.I. du PONT de NEMOURS & COMPANY,

                            Third-Party Defendants.
_____


        Third-party defendant Olin Corporation ("Olin") has filed a motion (Item 1572)

seeking reconsideration of this court's May 16, 2012, Decision and Order ("May 16[th]

Order")[1] entered in compliance with the directives on remand set forth in the Second

Circuit's December 19, 2011, Opinion and Summary Order[2] constituting the circuit court's

ruling on the parties' appeals from this court's January 26, 2010 findings of fact and

conclusions of law after trial.[3]   Third-party plaintiff Solvent Chemical Company, Inc.

("Solvent") and third-party defendant E.I. du Pont de Nemours & Company ("DuPont") have

---

[1] *New York v. Solvent Chemical Co., Inc.*, ___F. Supp. 2d___, 2012 WL 1790383 (W.D.N.Y. May 16, 2012).

[2] *New York v. Solvent Chemical Co., Inc.*, 664 F.3d 22 (2d Cir. 2011) ("Opinion"); *New York v. Solvent Chemical Co., Inc.*, 453 F.App'x 42 (2d Cir. 2011) ("Summary Order").

[3] *New York v. Solvent Chemical Co., Inc.*, 685 F. Supp. 2d 357 (W.D.N.Y. Jan 26, 2010).

made written submissions (Items 1574 & 1575) in response to Olin's motion.  For the reasons that follow, the motion is denied.

The court's May 16th Order was issued upon thorough examination of the Second Circuit's ruling on appeal, which vacated this court's attempt to equitably allocate the past costs associated with the remediation of groundwater contamination at the portion of Olin's property referred to as the "Hot Spot," and reversed this court's denial of Solvent's prayer for a declaratory judgment as to the parties' liability for recovery of future response costs. The matter was remanded with the directives (1) to reallocate response costs for the Hot Spot, and (2) to enter a declaratory judgment in favor of Solvent, and against DuPont and Olin, as to liability for recovery of future response costs.  *See New York v. Solvent Chemical Co., Inc.*, 453 F.App'x 42, 49 (2d Cir. 2011).

Upon consideration of the parties' written proposals for compliance with these directives, and upon review of the record on remand, this court found in its May 16th Order that the extensive testimony and exhibits presented at trial with respect to the underlying hydrogeology, groundwater chemistry, and migratory pathways in the area of concern provided a solid basis for the Hot Spot reallocation and declaratory relief without the need for additional discovery, presentation of evidence, briefing, argument, "or other wasteful re-visitation of issues that have been exhaustively litigated during years of pretrial proceedings, lengthy trial on the merits, and on appeal."  *New York v. Solvent Chemical Co., Inc.*, ___F. Supp. 2d___, ___, 2012 WL 1790383, at *1 (W.D.N.Y. May 16, 2012). The court noted that the Second Circuit had either expressly affirmed or left undisturbed this court's findings and conclusions with respect to the source and migration of the chlorinated benzene and chlorinated aliphatic contamination detected at the Hot Spot, and

had sustained virtually all of the arguments Solvent made on appeal while rejecting all of the arguments made on appeal by both Olin and DuPont.   Accordingly, the court determined that "the interests of economy of public and private resources, judicial efficiency, and finality" would best be served by, in essence, adopting the remand proposal submitted by Solvent – the successful appellant – regarding both (1) the proper recalculation of allocable shares of responsibility for remediating groundwater contamination at the Olin Hot Spot, and (2) the issuance of a declaratory judgment as to liability, and a method for calculating equitable shares of responsibility, for future response costs incurred by Solvent for the Solvent Site B-Zone and Hot Spot groundwater remediation.  *Id.*

The standards for granting a motion for reconsideration are "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  The limited grounds recognized by the courts as sufficient to justify reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.) (quoting 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE & PROCEDURE § 4478 at 790), *cert. denied*, 506 U.S. 820 (1992).

A motion to reconsider "should not be granted where the moving party seeks solely to relitigate an issue already decided."  *Shrader*, 70 F.3d at 257.  The motion must be

narrowly construed, and the standards strictly applied, "to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court, to ensure finality and to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters." *Polar Intern. Brokerage Corp. v. Reeve*, 120 F. Supp. 2d 267, 268–69 (S.D.N.Y. 2000) (internal quotation marks and citations omitted). "A motion for reconsideration is not intended as a vehicle for 'presenting the case under new theories, securing a rehearing on the merits, or otherwise taking 'a second bite at the apple.'" *Holmes v. Fischer*, 2012 WL 1223000, *1 (W.D.N.Y. Apr. 11, 2012) (quoting *Griffin Industries, Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)).

Narrowly construed, Olin's motion seeks reconsideration of the court's May 16th Order to the extent it allocates shares of responsibility for both past and future response costs at the Hot Spot by using a volumetric comparison of aliphatics vs. benzenes based upon an average of the pumping well data relied upon by Solvent's allocation expert, James Kohanek, with the monitoring well data relied upon by DuPont's expert, Charles Faust.[4]  According to Olin, this method results in an unreliable basis for the Hot Spot

---

[4]Olin also contends that the court should reconsider the May 16th Order to the extent it purports to allocate the costs of groundwater remediation incurred subsequent to June 30, 2007 by using monitoring well data obtained from as far back as 2004 (as opposed to more contemporaneous data collected by Solvent on a semi-annual basis) (*see* Item 1572, p. 8), and to the extent is purports to allocate future Costs based on "pumped well" data (as opposed to "volumetric contamination" data) (*see id.* at 8-10). Apart from the reasons for denial of Olin's motion set forth in the text herein, these concerns have been adequately addressed by language in the May 16th declaratory judgment requiring Solvent to document "Past Future Costs" (costs incurred by Solvent from July 1, 2007 through December 31, 2011) by affidavit of a suitable representative with personal knowledge and access to supporting data, and directing "Future Future Costs" (costs incurred by Solvent after December 31, 2011) to be allocated based upon a recalculation of the Kohanek framework percentages using new groundwater data gathered twice a year, with an opportunity for DuPont or Olin to challenge these calculations upon written demonstration of good cause. *See Solvent Chemical*, ___F. Supp. 2d at ___, 2012 WL 1790383, at *1.

reallocation since the monitoring well data used by Dr. Faust was obtained from monitoring wells located throughout the entire Solvent plant site, not just from the monitoring wells located at the Hot Spot.[5]

As should be clear from a reading of the May 16th Order in conjunction with those portions of the court's January 26, 2010 findings of fact and conclusions of law left undisturbed by the Second Circuit's December 19, 2011, Opinion and Summary Order, the determination to adjust the relative contribution rates of benzenes and aliphatics to be applied to Mr. Kohanek's allocation framework by averaging the widely varying constituent data obtained from the pumping wells and the monitoring wells was the result of the court's effort "to deal with [the] situation by creative means, considering all of the equities and balancing them in the interests of justice." *New York v. Westwood-Squibb Pharmaceutical Co., Inc.*, 2004 WL 1570261, at *21 (W.D.N.Y. May 25, 2004).  This balance was performed by the court, in the exercise of its broad discretion under CERCLA § 113(f), as a way to reconcile "the wide disparity in the parties' interpretation of the vast amounts of data generated over the course of decades of remedial investigations and clean-up activities" in the areas of concern.  *New York v. Solvent Chemical Co., Inc.*, 685 F. Supp. 2d 357, 451 (W.D.N.Y. Jan 26, 2010).  The adjustment was deemed to be an appropriate

---

[5]For its part, DuPont asserts in its "Response" that it agrees with Olin's contentions regarding the need to reconsider allocation of costs incurred in remediating the Hot Spot based on the volume of water pumped from the Hot Spot, as opposed to "contaminant load" or "volumetric contamination" data (*see* Item 1575, pp. 5-8), and in allocating "Past Future Costs" on the same basis as "Past Past Costs" (*id.* at 8-10).  DuPont also contends that the issuance of the May 16th Order deprived DuPont and Olin of a fair opportunity to present a detailed position regarding the reallocation of the Hot Spot and the allocation of post-June 30, 2007 costs (*id.* at 4).

To the extent DuPont intends its "Response" to constitute a motion to reconsider on grounds separate from those raised by Olin and discussed herein, that motion is denied as untimely pursuant to Rule 7(d)(3) of the Local Rules of Civil Procedure for United States District Court for the Western District of New York (requiring motion for reconsideration to be filed "no later than twenty-eight days after the entry of the challenged judgment, order, or decree ….").

consideration for equitable allocation of shares of responsibility for the costs associated with the overall B–Zone groundwater remedy in light of the parties' "inability to reach any workable consensus as to the reasonable scientific conclusions to be drawn" from the evidence presented at trial, *id.* at 452, and the Second Circuit found "no abuse of discretion" in this regard. *Solvent Chemical*, 453 F.App'x at 48.

Contrary to Olin's (and DuPont's) arguments, in making its rulings on remand regarding both the Hot Spot reallocation and the entry of declaratory judgment on liability establishing a reasonable framework for equitable allocation of future response costs for the Solvent Site B–Zone and Hot Spot groundwater remediation, the court did not overlook any "volumetric contamination" data, "contaminant load" data, or any other factual matters that might reasonably be expected to alter its conclusions as to the appropriate equitable factors to consider in its analysis. Rather, upon full consideration of the vast record before it, and in accordance with established precedent, the court determined that the tasks charged on remand could be accomplished by applying the same methodology it had previously applied in its prior, unchallenged allocation of costs associated with the Solvent Site B–Zone remedy, without further unnecessary expenditure of precious public and private resources.

In any event, the issues raised by Olin in its motion for reconsideration were not addressed by the Second Circuit on appeal, were not a subject of the limited remand, and are therefore not ripe for reconsideration. The court finds nothing in the parties' written submissions to otherwise suggest "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" warranting reconsideration of the court's May 16th Order, entered in the interest of ensuring

the finality of this interminably protracted litigation by reaching an equitable allocation of cleanup costs among the parties in accordance with CERCLA § 113(f)(1).

For these reasons, Olin's motion for reconsideration (Item 1572) is denied, and the rulings set forth in the court's May 16, 2012 Order (Item 1571) regarding Hot Spot reallocation and entry of declaratory judgment shall constitute the final ruling of the court in this action.  At a time reasonably calculated to address the matters discussed therein, third-party plaintiff Solvent shall submit to the court a proposal for entry of final judgment by the Clerk of the Court.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   July 31,  2012
p:\pending\1983\83-1401.july24.2012