UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THE STATE OF NEW YORK,

      Plaintiff,

   -vs-

SOLVENT CHEMICAL COMPANY, INC., and     83-CV-1401-JTC
ICC INDUSTRIES, INC.,

      Defendants/Third-Party Plaintiffs,

   -vs-

OLIN CORPORATION and
E.I. du PONT de NEMOURS & COMPANY,

      Third-Party Defendants.

---

On July 31, 2012, this court denied third-party defendant Olin Corporation ("Olin")'s motion for reconsideration of the court's May 16, 2012, decision and order following remand, which addressed both (1) recalculation of allocable shares of responsibility for remediating groundwater contamination at the Olin Hot Spot, and (2) issuance of a declaratory judgment as to liability, and a method for calculating equitable shares of responsibility, for future response costs incurred by Solvent for remediating groundwater contamination at the Hot Spot and the Solvent Site B-Zone. *See New York v. Solvent Chemical Co., Inc.*, 2012 WL 3129129 (W.D.N.Y. Jul. 31, 2012). Final judgment was entered by the Clerk of the Court on August 27, 2012 (with retention of jurisdiction in this court to resolve any contested issues arising with respect to the recovery of costs incurred by Solvent subsequent to December 31, 2011) (Item 1580), and enforcement of the

judgment was stayed pending appeal upon approval of a supersedeas bond submitted to the court by Olin in an amount sufficient to secure the judgment entered against it. Item 1584.

Olin and third-party defendant E.I. du Pont de Nemours & Company ("DuPont") have now filed separate motions pursuant to Fed. R. Civ. P. 59(e) requesting amendment of the final judgment to reflect a recalculation of the equitable allocation of past and future remediation costs, based on "newly discovered evidence" regarding contemporaneous pumped well and monitoring well sampling data. The courts have repeatedly advised litigants that "relief under Rule 59(e) is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.' " *Raffe v. American Nat. Red Cross*, 2012 WL 140412, at *1 (N.D.N.Y. Jan. 18, 2012) (quoting *USA Certified Merchants, LLC v. Koebel*, 273 F. Supp. 2d 501, 503 (S.D.N.Y. 2003)). Furthermore, in order to warrant amendment of a final judgment to reflect "newly discovered evidence," the moving party must demonstrate that:

> (1) the newly discovered evidence was of facts that existed at the time of trial or otherwise dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*Becnel v. Deutsche Bank AG*, 838 F. Supp. 2d 168, 171 (S.D.N.Y. 2011) (citing *United States v. International Broth. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001)).

As discussed below, neither DuPont nor Olin has satisfied the heavy burden required to disturb the finality of the court's judgment, which was entered by the court upon exhaustive consideration of the evidence and arguments presented "during years of

pretrial proceedings, lengthy trial on the merits, and on appeal." *New York v. Solvent Chemical Co., Inc.*, ___F. Supp. 2d___, ___, 2012 WL 1790383, at *1 (W.D.N.Y. May 16, 2012); *see also Islam v. Fischer*, 2008 WL 650380, at *1 (S.D.N.Y. Mar. 6, 2008) (parties bear "heavy burden" in meeting "strict" standard for granting relief under Rule 59(e)).

**1.    DuPont's Motion**

DuPont seeks to amend the judgment to the extent that it relates to the allocation of Solvent's B-Zone remediation costs, incurred between July 1, 2007 and December 31, 2011 (referred to by the court and the parties as "Past Future Costs"). DuPont contends that the court utilized stale data (*i.e.*, an average of pumped well data from 2002, and groundwater monitoring well data from 2004-05) in its calculation of equitable shares of responsibility for Past Future Costs, and that the judgment should be amended to reflect recalculation of percentages based on the more contemporaneous pumped well sampling data and monitoring well data collected by Solvent in 2012 and submitted in connection with the proposed allocation of "Future Future Costs" for the period from January 1, 2012 through June 30, 2012 (as contemplated by the declaratory judgment issued pursuant to the court's May 16, 2012 order). *See* Item 1583-1, pp. 2-10; *see also* Item 1590-1, pp. 2-14 (revised).[1]

This contention is rejected, for several reasons. First, as indicated above, the "newly discovered evidence" relied upon by DuPont consists of data which was collected

---

[1] As reflected in these submissions, the monitoring well data utilized for this proposed allocation was collected between February 21-23, 2012 (*see* Item 1590, pp. 13, 14), and the pumped well data was collected on July 27, 2012 (*id.* at 11).

and analyzed for the purpose of allocating remediation costs incurred by Solvent subsequent to December 31, 2011, in accordance with the court's declaratory judgment. *See Solvent Chemical*, ___F. Supp. 2d at ___, 2012 WL 1790383, at *8. Viewed as such, this data can have no direct bearing on the court's calculation of the parties' equitable shares of the remediation costs incurred by Solvent during the "Past Future" time period between July 1, 2007 and December 31, 2011, and therefore cannot be considered by the court as "newly discovered evidence" that could change the outcome with respect to the very portion of the judgment DuPont seeks to amend.

Second, DuPont has made no showing to indicate how the data collected in February and July of this year (2012) might somehow be more representative of the groundwater chemistry during the period from July 2007 through December 2011 than the 2002-05 data utilized by the court for the equitable allocation upon which final judgment was entered. As was demonstrated by the highly technical – and often conflicting – expert opinion testimony evidence at trial, the fate and transport of contaminants in the groundwater zones beneath the Solvent, Olin, and DuPont Sites is influenced by a complex network of natural and man-made factors, making it highly unlikely that a single pump well sampling event in July 2012 would be representative of long term conditions on the site during the time periods addressed by the court's declaratory judgment.

In addition, as reflected in the May 16, 2012 order, the court's "common sense approach" to equitable allocation of responsibility for cleanup costs incurred on and after July 1, 2007, adopted in compliance with the Second Circuit's remand directives, fully contemplates the parties' consideration of new pumped well and monitoring well data "on a continuing basis" which might reasonably be expected to change the allocation


percentages in favor of one party or another. *Solvent Chemical*, 2012 WL 1790383, at *7. The declaratory judgment order also establishes a mechanism by which DuPont and Olin can challenge these allocations upon a showing of good cause by written application to the court, in an effort to accomplish the goals of equitable allocation under CERCLA "while limiting future proceedings to the minimum necessary to achieve this end." *Id.* This clear expression of the court's interests in finality of resolution and conservation of judicial resources certainly does not contemplate repeated post-judgment applications for modification of the judgment when new data provides a basis for adjusting allocation percentages. *See New York v. Solvent Chemical Co., Inc.*, 664 F.3d 22, 27 (2d Cir. 2011) ("A declaratory judgment with respect to liability saves litigants and courts substantial time and money, leaving for the future only the need to fix the amount of contribution and affording the court flexibility with respect to the time and manner for doing so.").

Accordingly, DuPont's motion to alter the final judgment is denied.

**2.    Olin's Motion.**

For its part, Olin seeks alteration of the judgment to reflect recalculation of allocable shares of responsibility for both "Past Future" and "Future Future" costs incurred in remediating the groundwater contamination (1) at the Hot Spot, by using site-specific monitoring well data,[2] and (2) as between the Hot Spot and the Solvent Site B-Zone, using the groundwater contaminant concentration data from the July 2012 pumping well

---

[2]This data is contained in the Solvent Site Operations Maintenance & Monitoring Reports ("OMMRs") for 3rd quarter 2007 through 1st quarter 2012, submitted to the record as Item 1586-1.

sampling. Narrowly construed, Olin's motion urges the court to revisit the allocation methodology adopted in the May 16, 2012 order, which is based on the relative volumes of water pumped from the Hot Spot and Solvent Site and treated by Solvent's groundwater remediation system ("GWRS"), and instead calculate allocable shares based upon the relative masses of contamination detected at those areas. This request is denied outright, since it is premised upon the very same arguments made by Olin in support of its motion to reconsider – which were directly addressed and rejected by the court in its July 31, 2012 order.

To briefly reiterate, the allocation methodology upon which final judgment has been entered in this case, assigning shares of responsibility among the parties for Past Future and Future Future cleanup costs based on an average of site-specific pumping well data with non-site specific monitoring well data, was adopted by the court in the exercise of its equitable discretion, and "in the interests of economy of public and private resources, judicial efficiency, and finality," in order to avoid "wasteful revisitation of issues that have been exhaustively litigated during years of pretrial proceedings, lengthy trial on the merits, and on appeal." *Solvent Chemical*, 2012 WL 1790383, at *1. In moving to reconsider this determination, Olin argued that the Hot Spot allocation should be based on data from monitoring wells "actually located at the Hot Spot," and that the allocation of both the Past Future Costs and Future Future Costs between the Solvent Site and the Hot Spot should be based on the relative "volumetric contamination" data obtained from the pumping wells at the Solvent Site B-Zone and the Hot Spot (as opposed to relative volumes of water

pumped and treated by the GWRS)).  See Item 1572, pp. 3-4.  The court rejected these arguments, explaining that:

> [I]n making its rulings on remand regarding both the Hot Spot reallocation and the entry of declaratory judgment on liability establishing a reasonable framework for equitable allocation of future response costs for the Solvent Site B–Zone and Hot Spot groundwater remediation, the court did not overlook any "volumetric contamination" data, "contaminant load" data, or any other factual matters that might reasonably be expected to alter its conclusions as to the appropriate equitable factors to consider in its analysis. Rather, upon full consideration of the vast record before it, and in accordance with established precedent, the court determined that the tasks charged on remand could be accomplished by applying the same methodology it had previously applied in its prior, unchallenged allocation of costs associated with the Solvent Site B–Zone remedy, without further unnecessary expenditure of precious public and private resources.

*Solvent Chemical*, 2012 WL 3129129, at *3.  In addition, the court noted that the issues raised by Olin "were not addressed by the Second Circuit on appeal, were not a subject of the limited remand, and are therefore not ripe for reconsideration." *Id.*

The court finds nothing in the site-specific monitoring well data from 2007-2012, or in the 2012 monitoring and pumping well data submitted by Solvent in connection with the proposed allocation of the first installment of Future Future Costs, that might reasonably be expected to cast doubt on these findings and observations, or to otherwise alter the equitable allocation determinations reached by the court in its May 16, 2012 order (and its July 31, 2012 order on reconsideration).  As the Second Circuit has often cautioned, a motion to alter a final judgment is an "extraordinary remedy" which "should not be granted where the moving party is solely attempting to relitigate an issue that already has been decided." *Lesch v. U.S.*, 372 F. App'x 182, 183 (2d Cir. 2010) (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *see also Stewart Park and Reserve*

*Coalition Inc. (SPARC) v. Slater*, 374 F. Supp.2d 243, 253 (N.D.N.Y. 2005).  This is precisely what Olin seeks to do here.

## **CONCLUSION**

For the foregoing reasons, the motions filed by DuPont (Item 1582) and Olin (Item 1585)  to alter the final judgment entered by the Clerk of the Court on August 27, 2012 (Item 1580) are denied.

So ordered.

_____
JOHN T. CURTIN
United States District Judge

Dated:                         2012
p:\pending\1983\83-1401.R59(e).nov20.2012